UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESSE LELIEVRE<br><br>Defendant | No. 24-cr-10217-DJC |

GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Jesse Lelievre owns and operates Paramount Plumbing & Heating LLC ("Paramount Plumbing & Heating"), a Massachusetts company that provided plumbing, heating, and related services. After the COVID-19 pandemic began, Mr. Lelievre applied for and received roughly $1,222,000 from the U.S Small Business Administration ("SBA"), through its Economic Injury Disaster Loan ("EIDL") program. As a condition of that loan, Mr. Lelievre promised, under oath, to use the funds solely for business purposes. But Mr. Lelievre then decided to spend a portion of those funds for personal use.

In total, Mr. Lelievre misappropriated $179,090 as follows:

- $83,000 for a diamond ring;
- $4,800 for heating, ventilation, and air conditioning (HVAC) services at Mr. Lelievre's home;
- $13,000 for landscaping services at Mr. Lelievre's home;
- $7,000 for additional landscaping services at Mr. Lelievre's home;
- $30,000 for remodeling services at Mr. Lelievre's home; and
- $41,290 for additional remodeling services at Mr. Lelievre's home.

On April 30, 2024, the FBI approached Mr. Lelievre, who agreed to an interview. Mr. Lelievre originally said he only used the EIDL funds for business reasons, but over the course of the

interview, he eventually admitted to personal spending, in violation of the SBA loan agreement. Thereafter, Mr. Lelievre thereafter retained counsel and agreed to plead guilty to Theft of Government Property, in violation of 18 U.S.C. § 641.

## APPLICABLE SENTENCING GUIDELINES

As set forth in the Plea Agreement (ECF 2), the parties agree that Mr. Lelievre's total Offense Level is 11, calculated as follows:

- Defendant's base offense level is 6, because the offense of conviction is referenced to USSG § 2B1.1 and has a statutory maximum term of imprisonment of 10 years (USSG § 2B1.1(a)(2));

- Defendant's offense level is increased by 10, because the loss from the offense was more than $150,000 but not more than $250,000 (USSG § 2B1.1(b)(1)(F));

- Defendant's offense level is decreased by 3, because Defendant has accepted responsibility for Defendant's crime (USSG § 3E1.1); and

- Defendant's offense level is decreased by 2, because Defendant has no criminal history points and otherwise qualifies as a zero-point offender (USSG § 4C1.1).

The resulting sentencing range is between 8 and 14 months (Zone B).

## SENTENCING ARGUMENT

For the reasons stated below, the Court should sentence the defendant to 8 months of home confinement and 24 months of supervised release and should order restitution of $179,090.[1]

### A. Seriousness of the Offense and General Deterrence

In recommending a period of confinement, the government's focus is for Mr. Lelievre's sentence to reflect the seriousness of the offense and provide for general deterrence. 18 U.S.C. § 3553(a)(2)(A)-(B). Fraud during the Covid-19 pandemic was unfortunately widespread, resulting in a loss of confidence in such government programs. *See, e.g.*, U.S. Government

---

[1] The defendant has already paid this amount to the clerk's office.

Accountability Office, *How Prevalent is Fraud in Federal Programs? We Take a Look—Focusing on Unemployment Insurance Oversight* (January 23, 2023). The taxpayers who fund those programs should know that individuals who took advantage of the system are being required to repay the money and are being punished. Additionally, these sorts of financial crimes are "prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity' these crimes are 'prime candidates for general deterrence.'") (quoting Stephanos Bibas, *White–Collar Plea Bargaining and Sentencing After Booker,* 47 Wm. & Mary L.Rev. 721, 724 (2005)); *see also United States v. Prosperi*, 686 F.3d 32, 47 (1st Cir. 2012) ("We have previously emphasized the importance of general deterrence in white-collar crime."). The Court's sentence should therefore provide some deterrent to others who may consider defrauding government programs.

   B. <u>History and Characteristics of the Defendant</u>

  The government recommends a period of confinement at the low end of the applicable range, including the possibility of an alternative form of confinement based on the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Mr. Lelievre's crimes did not involve the use of stolen identities, which is a distinguishing factor from a substantial portion of the fraud committed against Covid-19 pandemic relief programs. Instead, Mr. Lelievre misappropriated less than 20% of an otherwise valid pandemic relief loan for personal use.

  Further, Mr. Lelievre has a Criminal History Category of I and has close family ties, including being actively involved and responsible for his family.

The Court should also consider that, almost immediately after being confronted with his conduct, Mr. Lelievre confessed, agreed to plead guilty, and sought permission from the Court to repay the misappropriated funds.

These facts warrant a more-lenient sentence than the typical defendant convicted of Covid-19-related fraud.

C.      Avoiding Sentencing Disparities and Providing Just Punishment

The legislative history of the Sentencing Reform Act of 1984, which created the United States Sentencing Commission, made clear that one of the Act's goals was to rectify the serious problem in the criminal justice system that white-collar offenders were not being adequately punished. *See* S. Rep. No. 98-225, at 77 (1983) ("[S]ome major offenders, particularly white-collar offenders . . . frequently do not receive sentences that reflect the seriousness of their offenses."). However, the Court must also "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. 3553(a)(6). As such, a period of incarceration at the low end of the sentencing range and consideration of a period of home confinement is warranted.

Where, as here, the "Offense Level" is 11, the Guidelines allow for the sentence imposed to include a period of home confinement. *See, e.g.*, USSG § 5C1.1(c) (allowing for a sentence of imprisonment or probation in combination with, for example, home confinement, where the Guidelines Sentencing Range is in Zone B); USSG § 5C1.1(e)(3) (allowing for "[o]ne day of home detention for one day of imprisonment" if the Court imposes a "substitute sentence"). For example, in a similar, recent case before another Session of this Court—a pandemic fraud case where the "Offense Level" was 11—Judge Young imposed a one day sentence (deemed served) to be followed by 36 months of supervised release with conditions including home confinement for the

4

first six (6) months with electronic monitoring. *United States v. Brooks*, Case No.23-cr-10310-WGY (ECF 36) (Sentencing Order).

## CONCLUSION

For the foregoing reasons, the government respectfully submits that a sentence at the low end of the sentencing range, with consideration of a period of home confinement, two years of supervised release, and restitution is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553.

Respectfully submitted,

JOSHUA LEVY
United States Attorney

By:   /s/ Kriss Basil
KRISS BASIL
CHRISTOPHER MARKHAM
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Kriss Basil
KRISS BASIL
Assistant United States Attorney